## CITY DECENNIAL BOARDS OF REVISION UNDER THE NEW ACTS ARE LEGAL.

[Superior Court of Cincinnati, sitting in General Term].

JOHN V. B. SCARBOROUGH ET AL v. JOHN H. GIBSON, TREASURER, ET AL.

Decided, May 5, 1903.

The City Decennial Board of Revision, created in pursuance of Section 2814*a* of the Hendley Law (94 O. L., 246), and of Section 2814*aa* (95 O L., 1), is not an illegal body, contravening the Constitution of Ohio, and its acts are, therefore, legal.

SPIEGEL, J.; FERRIS, J., and DEMPSEY, J., concur.

This cause came into this court upon reservation from the special term, and is one of about fifty cases, selected by agreement for submission to this court, to test the questions of law raised.

This action is brought under Section 5848 (Act of 1856, 53 O. L., 178) to restrain the county auditor from placing, or continuing, upon the tax duplicate for the decennial period beginning with the year 1901, against the real estate of the plaintiffs, in said petition described, an alleged illegal addition to the valuation thereof of $33,500, and to restrain the county treasurer from collecting, or attempting to collect, the said additional taxes based on said increased valuation. It appears that said real estate was, during the year 1900, originally valued for taxation for the decennial period beginning in the year 1901, at the sum of $115,-500, by the City Decennial Board of Equalization, acting under the provisions of what are known as the Hendley and Royer laws.

78　　SUPERIOR COURT OF CINCINNATI.

Scarborough et al v. Gibson, Treasurer, et al.　[Vol. I, N. S.

(94 O. L., 246 and 94 O. L., 336). It appears, further, that the total value of the real estate of said city, as fixed by said City Decennial Board of Equalization, was not changed by the State Decennial Board of Equalization, and that the county auditor, proceeding to make up the tax duplicate for the year 1901, entered plaintiff's property upon the duplicate at the valuation of $115,500, and fixed his taxes semi-annually at $1,433.36, each installment; that said duplicate was delivered to the county treasurer, one of the defendants herein, for tax collection, and that the first installment, due December 20, 1901, was paid by plaintiffs to the treasurer, who thereafter made his settlement with the auditor, on or about February 15, 1902. Meanwhile, to-wit, on the first Monday in June, 1901, the City Decennial Board of Revision was called together by the county auditor, and began the investigation of complaints against valuations fixed originally by the City Decennial Board of Equalization, and entered on the tax duplicate for 1901 by the auditor. This board acted in pursuance of Section 2814a of said Hendley law (94 O. L., 246) and of Section for 1901 by the auditor. This board acted in pursuance of Section 2814a of said Hendley law (94 O. L., 246) and of Section 2814aa (95 O. L., 1), which latter act authorized valuation of plaintiff's property $33,500 upon a written complaint of the county auditor that said property had been undervalued, as well as a similar written complaint signed and filed with said board by all its members. Citations were issued to all owners of property, where tax valuations were increased, and they were heard by the board; but no citations were issued to persons whose tax valuations were decreased.

Against this increase of tax valuations, by the City Decennial Board of Revision, these plaintiffs filed this suit, and obtained a temporary restraining order against the collection of said increase in taxes. Fifty other plaintiffs did likewise, and obtained a similar restraining order.

The petition is based upon the ground that these sections of the Royer and Hendley laws, and the extension act, creating city decennial boards of revision, and conferring powers upon said boards and prescribing their duties, etc., are unconstitutional and void, because they contravene the provisions of—

1. Article II, Section 26 of the Constitution of Ohio: "All

laws of a general nature shall have a uniform operation throughout the state."

2. Article XII, Section 2 of the Constitution: "Laws shall be passed taxing by a uniform rule . . . all real . . . property according to its true value in money."

3. Article XIII, Section 1 of the Constitution: "The General Assembly shall pass no special act conferring corporate powers."

4. That the increases complained of are invalid because they increase the grand total of the decennial appraisement for Cincinnati, as fixed by the City Decennial Board of Equalization and approved by the State Decennial Board of Equalization.

The first three propositions are that the laws contravene Article II, Section 26 of the Constitution, providing that "all laws of a general nature shall have a uniform operation throughout the state;" Section II, of Article 12 of the Constitution, providing that "laws shall be passed taxing by a uniform rule all real property according to its true value in money;" and Section 1, Article XIII of the Constitution, providing that "the General Assembly shall pass no special act conferring corporate powers."

We fail to see how the laws under discussion violate any of these constitutional provisions. The taxing power is an exercise of the sovereignty of the state, through its General Assembly. (*Crawford* v. *Madigan,* 13 Dec., 494, at 497). The only check upon this power is the constitutional provision that all property must be taxed by a uniform rule according to its true value in money. The state may create as many taxing districts, and provide as many instrumentalities or agencies, to carry out its scheme of taxation, without any of these districts becoming a corporation, or its agents exercising corporate functions. The city of Cincinnati is a taxing district, but not a municipal corporation for taxing purposes. Section 2798 of the Revised Statutes provides that each decennial assessor shall return, before the first Monday of July, 1880, and every tenth year thereafter, the correct description and value of the real property subject to be listed for taxation in his district. The appraisement, therefore, of the decennial value of all the real property throughout the state was fixed uniformly and universally and according to its true value in money throughout the state on the first Monday of July, 1900, and all equalizations and revisions of said valuation date back, in the con-

templation of the law, to that date. There has been no claim made, nor would it be tenable, that the state can not create boards of equalization and revision, not to relist for taxation the property already listed by the assessors, but to equalize, within tax districts and among individuals, the valuations fixed upon the different pieces of property. One of the chief maxims governing taxation is, that taxes shall operate uniformly and equally upon all persons. This uniformity, experience has taught us, can only be obtained by boards of revision, upon complaints filed, or by direct action of the taxing officers, due notice being given thereof to those interested. Such revision dates back to the original assessment, and the rule of uniformity of taxation is not violated, because in certain large and populous districts the state's agents for the purpose of equalization and revision are more numerous, and the time in which to perform their duties is longer, than in smaller taxing districts. Nor are their appointments, or the functions they perform, the exercise of a corporate power. They are the state's agents, to carry out, in accordance with the constitutional rules giving taxation, one of its sovereign powers.

Finally, upon the claim advanced, that these increases are invalid, because the grand total of the decennial appraisement for Cincinnati was being increased over that fixed by the City Decennial Board of Equalization and approved by the State Decennial Board of Equalization, the rule provided by Section 2814, is that "said board of revision shall not reduce the aggregate value of the real property of the county below the aggregate value thereof, as returned by the assessors, with the additions made thereto by the auditor," but there is no inhibition against its increase. Nor does the Supreme Court, in *State, ex rel,* v. *Morris et al,* 63 O. S., 496, lay down any such rule.

These laws have been before our Supreme Court three times for adjudication and although the question of their constitutionality was not directly raised or argued, still in the case above cited, the court, in its syllabus, declares said laws to be valid acts. We follow this decision.

Judgment for the defendants, with vacation of the restraining orders issued.

*A. B. Benedict, F. O. Suire* and *Miller Outcalt,* for plaintiffs.

*Ampt, Ireton & Collins,* for the defendants.